UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA WALKER, | Case No. ED CV 14-2072-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**INTRODUCTION**

On October 16, 2014, plaintiff Yolanda Walker filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three issues for decision: (1) whether the Administrative

Law Judge ("ALJ") applied the correct legal standard when considering the medical opinions; (2) whether the ALJ properly considered plaintiff's credibility; and (3) whether the ALJ's residual functional capacity determination was supported by substantial evidence. Plaintiff's Memorandum in Support of Relief Requested in Plaintiff's Complaint ("P. Mem.") at 2-10; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2.

Having carefully studied the parties' moving and opposing papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not err. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-two years old on her alleged disability onset date, completed one year of college.[1] AR at 70, 198. Plaintiff has no past relevant work. *Id*. at 22.

On May 7, 2010, plaintiff filed an application for disability insurance benefits ("DIB") due to allergies, HIV, hypertension, high cholesterol, chronic pain, high blood pressure, and depression. *See id*. at 71, 177-87. The application was denied on November 18, 2010. *See id*. at 71.

On August 29, 2011, plaintiff filed an application for SSI, alleging an onset date of August 1, 2006 due to HIV, asthma, high cholesterol, high blood pressure, and left knee and hip pain. *Id*. at 70. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for hearing. *Id*. at 98-102, 106-11, 156.

On January 8, 2013, plaintiff, represented by counsel, appeared and testified

---

[1] As discussed below, plaintiff provided conflicting statements as to her education. *See* AR at 37, 198, 456, 466.

2

at a hearing before the ALJ. *Id.* at 29-69. The ALJ also heard testimony from Aida Worthington, a vocational expert. *Id*. 61-67. On February 14, 2013, the ALJ denied plaintiff's claim for benefits. *Id.* at 13-23.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since August 29, 2011, the application date. *Id.* at 15.

At step two, the ALJ found plaintiff suffered from the following severe impairments: human immunodeficiency virus ("HIV") infection and depression. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 16.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined that she had the RFC to perform a range of medium work, with the limitations that plaintiff: could lift/carry fifty pounds occasionally and twenty-five pounds frequently; could stand/walk/sit for six hours out of an eight-hour workday with regular breaks; was unlimited with respect to pushing and/or pulling other than as indicated for lifting/carrying; could frequently perform postural activities; must avoid concentrated exposure to the extremes of temperature and airborne irritants; was limited to simple tasks; and could have only occasional interaction with the public. *Id.* at 17.

The ALJ found, at step four, that plaintiff had no past relevant work. *Id.* at

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

22.

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform jobs "that exist in significant numbers in the national economy," including hand packager, bagger, and linen room attendant. *Id*. at 22-23. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("SSA"). *Id.* at 23.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the

ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Applied the Proper Legal Standard to Considering the Medical Opinions

Plaintiff argues the ALJ erred by applying "a reverse hierarchy approach to the medical evidence." P. Mem. at 2-5. Specifically, plaintiff argues the ALJ improperly gave greater weight to the opinions of the consultative examiners than to the opinions of the treating physicians. *Id.* In addition, plaintiff contends that the ALJ failed to properly discuss the opinions of the treating physicians, the ALJ's reasons for rejecting the opinions of the treating physicians were not supported by substantial evidence, and the ALJ failed to consider the opinions provided in a prior application for DIB.[3] *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining

---

[3] Plaintiff also argues that the ALJ failed to include all of Dr. Unwalla's opined limitations in his RFC determination. *See* P. Mem. at 5. Because this argument is reiterated as a separate claim – the third claim – the court will not discuss it here.

5

physicians; and (3) non-examining physicians.[4] 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nonetheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

Plaintiff's argument that the ALJ improperly applied a "reverse hierarchical approach" by giving greater weight to the opinions of consultative examiners implies that the ALJ must always give the greatest weight to the opinion of a

---

[4] Psychologists are considered acceptable medical sources whose opinions are accorded the same weight as physicians'. 20 C.F.R. § 416.913(a)(2).

treating physician. This argument is without merit. There is no requirement that the treating physician's opinion must be given the greatest weight. Instead, the law is clear that although the opinion of a treating physician is generally given the greatest weight, the ALJ may give an uncontradicted opinion less weight if he or she can provide clear and convincing reasons, and may reject a contradicted opinion if he or she can provide specific and legitimate reasons for doing so. *See Lester*, 81 F.3d at 830. The mere fact that the ALJ gave the opinions of the treating physicians less weight than the opinions of the examining physicians is not error.

Nor is the ALJ required to specifically address the physicians' specialties and length of treatment relationship. *See* P. Mem. at 3. The ALJ is required to consider these factors (*see* 20 C.F.R. § 416.927(c)), which the ALJ clearly does in the decision as he mentions their status as treating physicians. But the ALJ is not required to specifically discuss the length of the treatment relationship or specialties.[5] And as discussed below, the treatment notes were brief and did not contain much information.

Thus, unless the ALJ failed to provide legally sufficient reasons supported by substantial evidence for giving a treating physician's opinion less weight, the ALJ did not err.

**1.     Treating Physicians**

*Dr. Ryan Zane*

Dr. Ryan Zane, a preventive medicine specialist, treated plaintiff from August 30, 2010 through at least the date of the hearing. *See* AR at 580. Dr. Zane's treatment notes indicated he treated plaintiff's HIV infection but were

---

[5] Moreover, neither factor is helpful to plaintiff's arguments. Dr. Zane offered an opinion regarding plaintiff's mental limitations but is not a psychiatrist. Dr. Alfonso only examined plaintiff once before rendering an opinion.

sparse in detail. *See, e.g.*, *id*. at 526, 666-68. Dr. Zane's notes generally included vitals and reflected that others in his clinic, including a marriage family therapist ("MFT"), treated plaintiff. *See, e.g., id*. at 680.

In an HIV Assessment Form dated May 17, 2012, Dr. Zane noted plaintiff had no functional limitations with regard to her daily activities. *See id*. at 581. Dr. Zane opined that plaintiff had a depressed mood, mild impairment with memory and concentration, and flat affect, as well as suffered from insomnia and anhedonia. *Id*. Dr. Zane noted that a licensed MFT was providing individual and group therapy. *Id*.

On August 30, 2012, Dr. Zane also completed a Medical Statement Regarding HIV and AIDS for Social Security Disability Claim. *See id*. at 749-51. In this opinion, Dr. Zane reported that plaintiff suffered from significant weakness. *Id*. at 750. Dr. Zane further opined that plaintiff could only: work two hours a day; stand fifteen minutes at one time; sit thirty minutes at one time; and lift ten pounds occasionally and five pounds frequently. *Id*. Dr. Zane further opined that plaintiff was moderately impaired in her ability to remember and carry out short and simple instructions and interact appropriately with the general public and markedly impaired in her ability to understand and carry out detailed instructions, maintain attention and concentration, and ability to work with and get along with others. *Id*. at 751.

***Dr. Harbans Multani***

Dr. Harbans Multani, a psychiatrist, treated plaintiff from February 16, 2012 through May 3, 2012. *See id*. at 573-79, 593. At the last session, Dr. Multani noted plaintiff was taking all her medication, sleeping well, and had a good appetite. *Id*. at 593. Dr. Multani stopped treating plaintiff when the Foothill AIDS Project declined to continue paying for his services. *See id*. at 612.

Dr. Multani noted that plaintiff was listless, tearful, and anergic at the

sessions. *See id*. at 573-79, 593.  Based on plaintiff's complaints and his observations, Dr. Multani diagnosed plaintiff with major depressive disorder, recurrent, moderate but did not offer an opinion as to her functional limitations. *See id.*

### *Dr. Imelda Alfonso*

Dr. Imelda Alfonso, a psychiatrist, treated plaintiff on four occasions from October 26, 2012 through the January 8, 2013 hearing date. *See id*. at 590, 611, 755-58.  During those sessions, Dr. Alfonso observed that plaintiff had a depressed mood, low energy, constricted affect, and fair judgment. *See id*. at 611, 756-58.  Dr. Alfonso also noted that plaintiff denied suicidal ideation. *See id.*

In a Medical Statement Concerning Depression for Social Security Disability Claim,[6] Dr. Alfonso, after having only one session with plaintiff, opined that plaintiff had anhedonia, appetite disturbance with change in weight, sleep disturbance, psychomotor agitation, decreased energy, feelings of guilt, difficulty concentrating, and thoughts of suicide. *Id*. at 590.  Dr. Alfonso also opined that plaintiff would have marked restrictions in activities of daily living, would have marked difficulties in maintaining social functioning, would have deficiencies of concentration, and had repeated episodes of deterioration or decompensation. *Id*.

### 2. **Examining Physicians**

### *Dr. Ruben Ustaris*

Dr. Ruben Ustaris, an internist, examined plaintiff on January 31, 2012. *See id*. at 557-61.  Dr. Ustaris observed that plaintiff had a normal gait, mild palpable tenderness and reduced adduction with mild pain in the left hip, and mild pain in the left knee at the end of range of flexion, but had otherwise normal findings. *See id.*  Based on his examination, Dr. Ustaris opined that plaintiff:  could lift/carry

---

[6] The opinion is undated but must have been completed sometime between October 26, 2012 and November 5, 2012. *See* AR at 590.

fifty pounds occasionally and twenty-five pounds frequently; could stand/walk/sit six hours out of an eight-hour way with normal breaks; could push, pull, climb, balance, kneel, crawl, walk on uneven terrain, climb ladders, and work at heights frequently; and needed to avoid extremes in temperature, dust, odors, fumes, and other pulmonary irritants. *Id*. at 560-61.

### ***Dr. Khushro Unwalla***

Dr. Khushro Unwalla, a psychiatrist, examined plaintiff on February 2, 2012. *See id*. at 562-66. During the mental status examination, Dr. Unwalla observed that plaintiff had a sad and depressed mood, constricted affect, linear thought, and impaired abstract thinking. *Id*. at 564. Dr. Unwalla also observed that plaintiff had moderate difficulty interacting with the clinic staff and himself, moderate difficulty maintaining composure and even temperament, mild difficulties focusing, and moderate difficulties in concentration. *Id*. at 565. Based on his examination and plaintiff's reported history, Dr. Unwalla diagnosed plaintiff with depressive disorder, not otherwise specified. *Id*. at 564. From a functional perspective, Dr. Unwalla opined that plaintiff would have: mild limitations performing simple and repetitive tasks; and moderate limitations performing detailed and complex tasks, performing work activities on a consistent basis without special or additional supervision, completing a normal work day or week, accepting instructions from supervisors, interacting with coworkers and the public, and handling the usual stresses and demands of employment. *Id*. at 565.

### 3. **State Agency Physicians**

The State Agency physicians – Dr. F. Kalmar, Dr. J. Hartman and Dr. D. Funkenstein – reviewed plaintiff's treatment records and rendered nearly identical opinions regarding plaintiff's functional limitations as Dr. Ustaris and Dr. Unwalla. *See id*. at 74-81, 83-95.

### 4. The ALJ's Decision

In reaching his RFC determination, the ALJ gave significant weight to the opinions of Dr. Ustaris, Dr. Unwalla, and the State Agency physicians. *Id*. at 20. The ALJ gave little weight to the opinions of Dr. Alfonso and Dr. Zane, noting that the opinions were brief, conclusory, inadequately supported by clinical findings, inconsistent with plaintiff's daily activities, and not supported by the treatment records. *Id*. at 21. The ALJ also gave little weight to the medical opinions submitted in plaintiff's prior application because they were assessments of plaintiff's condition prior to his current application date and were therefore immaterial. *Id.* The ALJ's reasons were specific and legitimate and supported by substantial evidence.

First, the ALJ may properly reject a physician's opinion "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and supported by the record as a whole, or by objective medical findings). Both Dr. Zane's and Dr. Alfonso's opinions were simply check offs in a form document. *See* AR at 590, 749-51; *see also id*. at 580-82. Neither Dr. Zane nor Dr. Alfonso provided any explanation for their opinions, and therefore the opinions may be rejected on that basis. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.1996) (evidence of an impairment in the form of "check-off reports" may be rejected for lack of explanation of the bases for their conclusions).

Second, the ALJ properly determined that Dr. Alfonso's opinions were inconsistent with plaintiff's daily activities. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (inconsistency between a treating physician's opinion and a claimant's daily activities may be a specific and legitimate reason for rejecting the opinion). Plaintiff testified that she was able to wash dishes, do

housework, and do laundry. *See* AR at 56; *see also id.* at 581. Plaintiff also reported that she cooked, could drive or walk to public transportation, and go shopping. *See id.* at 563, 581. These activities are inconsistent with Dr. Alfonso's opinion that plaintiff had marked limitations in her ability to perform daily activities.[7]

Finally, the ALJ correctly noted that Dr. Zane's and Dr. Alfonso's opinions were not supported by the treatment records and objective medical evidence. *See id.* at 21. Dr. Zane's treatment notes, as well as the treatment notes from others at his clinics, were bereft of any clinical findings to support Dr. Zane's opined physical and mental limitations. With regard to physical limitations, Dr. Zane's treatment notes were simply check marks on a form of his diagnosis and lab work ordered, with no or little comments. *See, e.g.*, AR at 530-32, 666-68. Even the other treatment notes from other providers at Dr. Zane's clinic did not contain clinical findings. *See, e.g., id.* at 522-26. Instead the notes primarily reflected plaintiff's subjective complaints and the administrative tasks done concerning plaintiff's disability application. *See, e.g., id.* Nothing in the treatment notes indicated that plaintiff's HIV status resulted in any significant complications.[8] Similarly, the treatment notes regarding plaintiff's mental status only contained

---

[7] Dr. Alfonso's opinion that plaintiff had thoughts of suicide was also inconsistent with her treatment notes, which indicated that plaintiff denied suicidal ideation. *See* AR at 756-58.

[8] Plaintiff cites to treatment records from another clinic, but those treatment records also do not reflect complications from HIV. *See, e.g.*, AR at 496-507. Moreover, other than a finding that plaintiff has moderate osteoarthritis of the left knee and a small osteochondroma, the records do not support plaintiff's claim of degenerative disc disease and neuropathy. *See id.* at 514, 633, 649. Even if plaintiff had degenerative disc disease and neuropathy and Dr. Zane had reviewed the results, those findings still do not support the extreme physical limitations opined by Dr. Zane.

subjective complaints. *See, e.g., id*. at 523-27.

As for Dr. Alfonso, at the time she submitted her opinion, she had only treated plaintiff on one occasion. *See id*. at 590. Although Dr. Alfonso noted that plaintiff had a depressed mood and constricted affect, those findings do not support the marked limitations she opined. Even if the court were to take into consideration the clinical findings of Dr. Marcia Hudson and Nancy Carota, the psychiatrist and MFT at Dr. Alfonso's clinic who conducted the initial evaluations, there was still insufficient objective evidence to support Dr. Alfonso's opinion. Dr. Hudson noted that plaintiff was angry and depressed but her other clinical findings were within normal limits. *See id*. at 613. Carota observed that plaintiff was oriented, cooperative, and had fair insight. *See id*. at 617. None of these findings support marked limitations.[9]

The ALJ also rejected the opinions of Dr. Sean To and Dr. Tanya Scurry, physicians who examined plaintiff and rendered opinions in connection with plaintiff's prior application for DIB. *Id.* at 21; *see id.* at 455-59, 465-71. The ALJ is not required to consider opinions predating the alleged onset of disability. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). But here, although plaintiff only qualified for benefits beginning the month following the month the application was filed, the opinions were rendered after the alleged onset of disability and within the twelve months preceding her application. *See* 20 C.F.R. §§ 416.335, 416.912(d)(2). Thus, the question is whether the ALJ is required to consider an opinion that had already been considered in a prior

---

[9] Although plaintiff references the subjective symptoms she relayed to Dr. Hudson and Carota as clinical findings supporting marked limitation, those are not objective clinical findings. *See* P. Mem. at 3. Further, as discussed *infra*, plaintiff's credibility was properly discounted.

13

application. *See Smith v. Colvin*, 2015 WL 5838819, at *8 (E.D. Wash. Oct. 7, 2015) (finding it was not error to reject an opinion rendered prior to the relevant period and that had already been considered in a previous application). The court need not resolve that question here, because even assuming the ALJ was required to consider the opinions, his failure to do so would be harmless. Dr. To and Dr. Scurry's opined limitations were consistent with, or less restrictive than, those of Dr. Ustaris and Dr. Unwalla, to which the ALJ gave significant weight. *Compare* AR at 459, 470 *with id.* at 560-61, 565.

In sum, the reasons cited by the ALJ for rejecting the opinions of Dr. Zane and Dr. Alfonso were specific and legitimate. As such, the ALJ did not err by giving greater weight to the opinions of the consultative examiners and State Agency physicians than to the opinions of Dr. Zane and Dr. Alfonso.

**B.    The ALJ Properly Considered Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to make a proper credibility determination. P. Mem. at 5-7. Specifically, plaintiff contends that the ALJ's reasons were not supported by substantial evidence. *Id*.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[10] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain

---

[10] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan*, 246 F.3d at 1203 n.1 (internal citations omitted).

or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 18. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ discounted plaintiff's credibility because: (1) plaintiff's activities of daily living were inconsistent with her alleged symptoms and demonstrated the capacity for work; (2) plaintiff made inconsistent statements about her drug abuse history; and (3) plaintiff's alleged symptoms were inconsistent with the objective medical evidence. *Id.* at 18-19.

The ALJ's first reason for finding plaintiff less credible was that plaintiff's activities of daily living were inconsistent with her testimony and they demonstrated that she had the capacity to work. *See Tommasetti*, 533 F.3d at 1039 (inconsistency between a claimant's alleged symptoms and her daily activities may be a clear and convincing reason to find a claimant less credible); *Bunnell*, 947 F.2d at 346-47 (same). At the hearing, plaintiff testified she could only sit about thirty minutes without pain, could stand about ten to fifteen minutes at a time, could only walk twice the length of her driveway, had weak grip strength, could

only lift a gallon of milk at most, and could not kneel. *See* AR at 53-56. Regarding her daily activities, plaintiff testified at the hearing and reported to Dr. Unwalla that she cooked, cleaned, shopped, watched television, washed laundry, and could attend church for a portion of the time. *See id*. at 53-56, 563. While it appears from her daily activities that plaintiff may have been exaggerating her limitations, her activities of daily living were not necessarily inconsistent wither her alleged symptoms. Plaintiff may be able to perform these activities in short intervals. Moreover, the mere fact that a claimant can engage in limited walking for exercise does not detract from her credibility as to her overall disability. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). If a claimant is "able to spend a *substantial* part of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit" him. *Id.* at 1049 (emphasis in original) (citation and quotation marks omitted). But nothing in plaintiff's testimony suggests that she spent a substantial part of her day engaging in those activities. As such, the ALJ's first reason for finding plaintiff less credible was not supported by substantial evidence.

The ALJ's second reason for an adverse credibility finding was that plaintiff made inconsistent statements regarding her history of drug abuse. AR at 18-19; *see Thomas*, 278 F.3d at 959 (plaintiff's conflicting statements about her drug and alcohol usage were a clear and convincing reason for discounting plaintiff's credibility). The record clearly reflects that plaintiff has a history of drug and alcohol abuse. *See, e.g.,* AR at 441, 445, 590, 615. Nevertheless, plaintiff made inconsistent statements about her drug abuse. Plaintiff admitted to Dr. Scurry that she abused drugs and alcohol, but then told Dr. To that she did not drink. *Id*. at 456, 466. In connection with the instant application, plaintiff reported to Dr. Unwalla that she did not have a history of alcohol and drug abuse. *Id*. at 563.

Plaintiff's inconsistent statements about her alcohol and drug abuse was a clear and convincing reason for finding plaintiff less than credible.[11]

Finally, the ALJ cited inconsistency between the objective medical evidence and plaintiff's alleged symptoms as a basis for discounting her credibility. *Id*. at 18-19. In other words, plaintiff's complaints were not supported by the objective medical evidence. Specifically, the ALJ noted that plaintiff listed HIV as a reason for her alleged disability but that the record reflects that plaintiff experienced no major complications from HIV. *Id.* Indeed, Dr. Ustaris noted that plaintiff's HIV was asymptomatic and Dr. Zane did not list any HIV-related symptoms. *See id*. at 560, 580; *see also id*. at 532. Plaintiff argues that her 25-pound weight loss in thirty days and peripheral neuropathy were both complications of her HIV. P. Mem. at 6. But plaintiff's arguments are not supported by the record. First, there is no evidence that plaintiff experienced a 25-pound weight loss in thirty days. During her initial assessment on August 28, 2012, plaintiff reported to Carota that she had experienced such a weight loss, but other than that statement there is nothing in the record documenting a sudden weight loss. *See* AR at 614. And to the contrary, at the January 2013 hearing, plaintiff testified that she gained about forty pounds in the previous year, not simply that her weight fluctuated by forty pounds as plaintiff argues. *See id*. at 35; Reply at 4. Similarly, the record does not indicate that neuropathy was a complication from HIV. While neuropathy may be a complication of HIV, it may also arise from other causes such as alcoholism and

---

[11] In addition to the inconsistent statements about her drug abuse, plaintiff also made inconsistent statements concerning her education and criminal history. In her application, plaintiff wrote that she completed one year of college, but she reported to Dr. To that she completed two and half years of college and told Dr. Scurry and Dr. Unwalla that she completed high school. *See* AR at 198, 456, 466, 563. As for her criminal history, despite her incarceration, plaintiff told Dr. Multani that she had never been arrested or incarcerated. *See id*. at 578; *see also id*. at 563.

17

trauma.  The record only contains self reports of neuropathy, and no physician indicated that it was a complication of HIV.  Indeed, in the HIV Assessment completed by Dr. Zane, he did not list neuropathy as an HIV symptom.  *See* AR at 580-83.

The ALJ also pointed out that contrary to plaintiff's testimony that she had difficulty walking, Dr. Ustaris noted that plaintiff had a normal gait and balance.  Although plaintiff had some lab results to support her pain allegations, there was no documentation of difficulty walking in the treatment records.  *Id.* at 19; *see id.* at 558.  Accordingly, there is substantial evidence supporting the ALJ's finding that plaintiff's complaints were not all supported by the objective medical evidence.

In sum, although one of the reasons cited by the ALJ was not clear and convincing, the ALJ cited two other clear and convincing reasons supported by substantial evidence for finding plaintiff less than credible.  As such, the ALJ did not err in discounting plaintiff's credibility.

**C.     The ALJ's RFC Assessment Is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  P. Mem. at 7-10.  Specifically, plaintiff contends that the ALJ failed to consider evidence of her pain, fatigue, and need for supervision.

RFC is what one "can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1).  The Commissioner reaches an RFC determination by reviewing and considering all of the relevant evidence.  *Id.*  As discussed above, the ALJ properly considered the medical evidence.  The medical evidence supported the ALJ's determination that plaintiff could perform medium work.  Plaintiff complained of pain resulting from injuries that occurred many years prior to the alleged onset date, and the diagnostic imaging reflected moderate osteoarthritis of the left knee, osteitis pubis, and a small focal protrusion suggestive of a small

osteochondroma. *See id*. at 514, 633, 649. But Dr. Ustaris observed that plaintiff had a normal gait and balance, did not require the use of assistive devices for ambulation, had mild pain and tenderness in the left hip, and had otherwise normal findings. *See id.* at 557-61. Moreover, plaintiff complained of pain and fatigue, but such complaints are subjective and plaintiff's credibility was properly discounted.

As for plaintiff's mental limitations, plaintiff argues the ALJ erred because, despite giving significant weight to Dr. Unwalla, the ALJ only incorporated two of his opined limitations, to simple repetitive tasks and occasional interaction with the public. P. Mem. at 8. The ALJ is not required to adopt a physician's opinion in its entirety and, in fact, the ALJ expressly stated that he "adopted those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole." AR at 21; *see Magallanes*, 881 F.2d at 753. Although Dr. Unwalla opined that plaintiff would have moderate difficulties performing work activities without special or additional supervision, the ALJ was not required to adopt that restriction. The ALJ indicated he found only the limitations to simple work and limited public contact were supported by the objective evidence as a whole. AR at 20-21. Plaintiff does not cite any objective evidence to support the supervision limitation.[12]

Moreover, the ALJ's limitation of plaintiff to simple and repetitive tasks actually incorporates much of Dr. Unwalla's opinion. In Dr. Unwalla's opinion, he lists the difficulties he observed during the examination, including mild

---

[12] Plaintiff also argues that the vocational expert testified there would be no work she could perform if her RFC included the supervision limitations. *See* P. Mem. at 10. Plaintiff is incorrect. The vocational expert testified there would be no work plaintiff could perform if, beyond the probationary period, a supervisor was required to monitor plaintiff every hour for ten minutes. AR at 66. Dr. Unwalla's opined limitations did not specify additional supervision every hour. *See id*. at 565.

difficulties focusing and maintaining attention, and moderate difficulties in concentration, persistence, and pace. *See* AR at 565. Dr. Unwalla then opined the functional limitations plaintiff would have due to the observed difficulties, including mild limitations performing simple and repetitive tasks and moderate limitations performing detailed and complex tasks. *See id.* Thus, Dr. Unwalla's opined limitation to simple and repetitive tasks captured the observed difficulties, and the ALJ incorporated this limitation in his determined RFC.

Accordingly, the ALJ's RFC determination was supported by substantial evidence.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: March 21, 2016

SHERI PYM
United States Magistrate Judge